UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff(s), | Civil No. 13-810 (DRD) |
| LUIS DANIEL ROBLES COSTOSO, | |
| Defendant(s). | |

**OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

Pending before the Court are: (a) *Motion Requesting Suppression of Evidence* filed by the defendant Luis Daniel Robles Costoso ("Robles Costoso"), Docket No. 27; (b) *United States of America's Response in Opposition to Defendant's Motion to Suppress*, Docket No. 33; (c) *Report and Recommendation*, Docket No. 34; (d) *Objection to Report and Recommendation on Motion Requesting Suppression of Evidence* filed by Robles Costoso, Docket No. 35; and (e) *United States of America's Response in Opposition to Defendant's Objection to Report and Recommendation on Motion to Suppress*, Docket No. 39.  For the reasons set forth below, the defendant's *Motion to Suppress*, Docket No. 27, is denied.

**Issue**

The core of this case is whether a search warrant is needed in a border search.  The simple answer is no, provided that the border search does not disturb certain constitutional rights.  The Court briefly explains below after considering the factual circumstances of this case.

**Factual and Procedural Background**

On or about October 30, 2013, the defendant Robles Costoso was approached by a Puerto Rico Police Department ("PRPD") Officer, nearby Gate 25, used by Southwest Airlines  at

the Luis Muñoz Marín International Airport ("LMMIA"), moved by an alert provided by a K-9 known as "Sam-6" related to a piece of luggage with a bag tag # 0332897036.  The K-9 has shown a behavior consistent with the odor to controlled substances.  The Officer identified himself and requested the defendant for his boarding pass and a photo identification.  When the Officer compared the defendant's boarding pass number with the bag tag number alerted by the K-9, both numbers matched.  The defendant's boarding pass was for flight 5122 (Air Tran 122) from San Juan to Atlanta by Southwest Airlines, connecting with Southwest flight 5058 (Air Tran 58) from Atlanta to La Guardia Airport, New York.  The officer advised the defendant that his luggage has been alerted by the K-9 for the presence of controlled substances.  *See* Docket No. 1-1.

When asked by the Officer and a Drug Enforcement Agency ("DEA") Agent "if he was willing to voluntary accompany them to the PRPD Drug Unit Office to identify his luggage and answer some questions," the defendant agreed and followed the Officer and the DEA Agent to the office.  *Id.*  Whereupon at the unit defendant Robles Costoso identified his luggage as the black bag with tag # 0332897036.  *Id.*  The defendant Robles Costoso "provided written consent to open and search his bags." *Id.*  "Upon inspection, officers observed in Robles [Costoso]'s black bag a total of 12 bricks, with a gross weight of 15.75 kilograms."  *Id.*  "A field test was conducted and the substances tested positive for cocaine."  *Id.*  Thereafter, the defendant Robles Costoso was read his *Miranda* rights, signed the *Miranda* form, and stated that he understood his rights.  *Id.*  Whereupon, the defendant admitted that the bag containing the kilograms of cocaine belonged to him, and explained how he prepared the controlled substance and placed them inside the bag.  *Id.*  Defendant Robles Costoso provided a detailed statement as to how he prepared the 12 bricks of cocaine, totaling a gross weight of 15.75 kilograms.  *See* Docket No. 1-1.  Defendant further explained what

was the purpose of his trip to the Bronx, New York; his role on this trip; how and from whom he got the controlled substances, including names and addresses. *Id.*

The Grand Jury filed a two count *Indictment* on November 7, 2013 against the defendant Robles Costoso, charging the defendant with: (a) Count One, conspiracy to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a controlled substance, in violation of 21 U.S.C. § 841(1)(1) and § 846; and (b) Count Two, possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1). *See* Docket No. 9.

The defendant's *Motion Requesting Suppression of Evidence*, Docket No. 27, was referred to Magistrate Judge Marcos E. López for report and recommendation. *See* Docket entries No. 29, 30. The Magistrate Judge entered a *Report and Recommendation* on August 14, 2014 without holding an evidentiary hearing, Docket No. 34. The *Report and Recommendation* was timely objected by the defendant on August 28, 2014, Docket No. 35, followed by the Government's opposition to the defendant's objections to the *Report and Recommendation* filed on September 25, 2014, Docket No. 39.

## Standard of Review

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); Rule 59(b)(2) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), and Local Rule 72(a)(6) of the Local Rules for the District of Puerto Rico, as amended ("Local Rules"). *See Mathews v. Weber*, 423 U.S. 261 (1976). As a general rule, an adversely affected party may contest the Magistrate Judge's report and

recommendation by filing its objections within fourteen (14) days after being served a copy thereof. *See* Local Rule 72. Moreover, 28 U.S.C. § 636(b)(1), in its pertinent part, provides that:

> Within fourteen days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"The district judge need not normally conduct a new hearing and may consider the record developed before the magistrate judge, making his or her own determination on the basis if that record." *See* Local Rule 72(d) of December 3, 2009, as amended on September 2, 2010.

However, "[a]bsent objection by the plaintiffs, [a] district court ha[s] a right to assume that [a party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v. Maccarone*, 973 F.2d 22, 30-31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that specific objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish*, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.*, 848 F.2d 271, 275 (1st Cir. 1988); *Borden v. Secretary of H.H.S.*, 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a *de novo* review, "however he was not entitled to a *de novo* review of an argument never raised"). *See generally United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir.

1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980). **Hence, the standard for review of an objected report and recommendation is *de novo* review of those matters properly objected**. (Emphasis ours). *See Borden v. Secretary of H.H.S.*, 836 F.2d at 6. The Court, therefore proceeds, as the *Report and Recommendation* has been objected, to review *de novo* the *Report and Recommendation* issued by the Magistrate Judge, as to those parts that have been objected. *Borden v. Secretary of H.H.S.*, *supra*.

### Discussion

A.    The Objections:

Defendant Robles Costoso's objections are the following:

"(1) That Defendant is not entitle[d] [sic] to an evidentiary hearing base[d] [sic] on the facts that were alleged in the motion to suppress; and (2) After analyzing the facts in the case it [the Magistrate Judge] concludes that defendant was not under custody when State Agents approach him and took his id and boarding pass." *See* Docket No. 35. Defendant further alleges that "there is a significant discrepancy" as to when defendant was first under custody and the voluntariness of his movements." *Id.* Furthermore, the defendant also alleges that absent a search warrant, "the events that occur after the initial intervention with Robles-Costoso are fruit of the poisonous tree." (Citations omitted). *See* Docket No. 35.

B.    The Government's Response:

The Government's response to the defendant's objections to the *Report and Recommendation* on the motion to suppress, Docket No. 39, emphasizes on the following:

(1)    There is no right to an evidentiary hearing on a motion to suppress. The Government alleges, that "[a] criminal defendant has no presumptive right to an evidentiary

hearing on a motion to suppress." *United States v. Cintrón*, 724 F.3d 32, 36 (1st Cir.2013). "A decision to hold an evidentiary hearing on a motion to suppress rests with the sound discretion of the district court. *United States v. Calderón*, 77 F.3d 6, 9 (1st Cir.1996)." The Court agrees and incorporates the Magistrate Judge's findings and recommendation on this matter. *See Report and Recommendation*, Docket No. 34, pages 3-4.

(2)     "When law enforcement [agents] first approached the defendant, they conducted an investigatory stop." *See* Docket No. 39, page 3. "Investigatory stops are lawful when there is reasonable suspicion that an individual has engages in criminal activity. *See United States v. Arvizu*, 534 U.S. 266, 275-77 (2002)." *Id.* "During the stop, police may ask questions or request documents to establish a person's identity and to confirm or dispel suspicions of criminal activity. *See Adams v. Williams*, 407 U.S. 143, 146 (1972)," and the collection of cases cited therein. *Id.*

(3)     In the instant case, the K-9 had "alerted positive to the odor of controlled substances in the defendant's luggage . . . *See Adams*, 407 U.S. at 145 ("The Fourth Amendment does not require a policeman who lacks precise level of information necessary for probable cause to arrest *to simply shrug his shoulders and allow a crime to occur* or a criminal to escape")." (Emphasis on the original). *See* Docket No. 39, page 4. The Court agrees and briefly explains.

In order to proceed expeditiously, the Court will examine the facts as described by the defendant in his *Motion Requesting Suppression of Evidence*, Docket No. 27. The Court makes emphasis on the following facts when issuing the final ruling, as these facts are hereby quoted

directly from the defendant's motion to suppress, in order to avoid any wrong interpretation:

- A PRPD officer went to Gate 25, identified Mr. Robles-Costoso and then approached him. After approaching him, the PRPD officer identified himself as a PRPD officer, and demanded Mr. Robles- Costoso's boarding pass and photo identification.

- The officer advised Robles-Costoso that his luggage was alerted by the K-9 for the presence of a controlled substance. A PRPD officer and DEA moved Mr. Robles-Costoso to the PRPD Unit Office to identify his luggage and answer some questions. There is a controversy as to the voluntariness of Mr. Robles-Costoso movements once under Governments [sic] Agents custody.

- At the Unit, Robles-Costoso identified his luggage as the black bag with tag # 0332897036. Robles-Costoso provided written consent to open and search his bags. Upon inspection, officers observed in the black bag a total of 12 bricks, with a gross weight of 15.75 kilograms. A field test was conducted and substances tested positive for cocaine.

- Robles-Costoso then was read his Miranda Rights, signed the Miranda form, and stated that he understood his rights. He also stated that the bag containing the kilograms belonged to him, that he prepared the kilograms and placed them inside his bag. He claimed that he owned the cocaine and that he purchased the cocaine at the streets near his residence in Bayamon, Puerto Rico. That he picked up the kilograms from an individual in a blue, two-story house.

- After being confronted with the fact of whether he was the owner of the 12 kilograms,[1] he admitted that he was a courier.

*See* Docket No. 27, page 2.

### Analysis

The Court finds that there are no discrepancies as to the facts pled by the defendant in his motion to suppress[2] and the findings of fact made by the Magistrate Judge in the *Report and*

---

[1]    The Court notes that the defendant was carrying 12 bricks, with a total weight of 15.75 kilograms of cocaine in the luggage bag with the tag # 0332897036.

[2]    The defendant alleges in his objections to the *Report and Recommendation*, Docket No. 35, that the Magistrate Judge "concludes that the version of facts presented by the Defense is nearly identical to that of the affidavit in support of the criminal complaint presented by the Government in this case." *See* Docket No. 35, page 2. "At the same time the R&R recognizes that there is a 'significant discrepancy' between defendant and Government's allegations of facts (R&R p.3)." *Id.* "The R&R recognizes this discrepancy as the voluntariness of Mr. Robles-Costoso (defendant) movements once under Governments [sic] custody." *Id.* "The issue of 'custody' depends exclusively upon whether a reasonable person in the defendant's position would have felt free to leave taking into consideration the totality of the circumstances." The Court understands that the defendant's interpretation of the findings made by the Magistrate Judge is not accurate, as the Magistrate Judge found just the contrary:

> This vague allegation that he [Robles Costoso] was "moved" and conclusory allegation that there is a "controversy" as to the voluntariness of his movements are insufficient to warrant an evidentiary hearing. He [Robles Costoso] offers no specificity as to how he was "moved" from the gate to the Drug Unit Office or as to what movements in particular were involuntary once he [defendant] was at said office. Furthermore, nowhere does defendant claim that he never gave his consent to search his luggage, that his consent was coerced or even circumstances that would render his consent questionable. While his [defendant] leaves open the possibility that he was pushed, pulled, or restrained, such scenarios are mere speculation in a factual vacuum. Moreover, the statement is sufficiently vague that ir could also be entirely consistent with the government's version of the facts from the affidavit: that defendant followed a PRPD office and DEA agent to the office. Defendant's motion fails to set forth any specific factual allegations that would allow the court to determine a controversy exists regarding whether his movements were in fact voluntary, and he has not provided any additional evidence to support this assertion. Therefore, he [defendant] is not entitled to an evidentiary hearing regarding his motion. *See e.g., United States v. Calderón*, 77 F.3d 6, 9 (1ˢᵗ Cir.1996) (affirming decision to deny motion to suppress without an evidentiary hearing where defendant "vaguely" claimed that his consent was coerced but did not describe the circumstances supporting his assertion or offer proof as relative to other facts that might support the asssertion).

*See Report and Recommendation*, Docket No. 34, pages 3-4.

*Recommendation*, Docket No. 34, pages 1-2.  Hence, the Court hereby adopts the findings of fact as they appear in the *Report and Recommendation*, Docket No. 34.  In any event, the Court finds that the question of the defendant's voluntariness is a credibility issue, which is best reserved to the jury.

### The Border Search

The United States has a right to protect its borders by stopping and checking individuals and property entering or leaving the Nation's borders.  The border search constitutes an exception of the Fourth Amendment of the Constitution of the United States of America ("Fourth Amendment").[3]

"The broad contours of the scope of searches at our international borders are rooted in 'the long standing right of the sovereign to protect itself and examining persons and property crossing into this country.'" *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir.2013), citing *Ramsey*, 431 U.S. at 616.  "Thus, border searches form 'a narrow exception to the Fourth Amendment prohibition against warrantless searches without probable cause.'" *Id.*, citing *United States v. Seljan*, 547 F.3d 993, 999 (9th Cir.2008).  "Because '[t]he Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border,' *United States v. Flores-Montano*, 541 U.S. 149, 152 (2004), border searches are generally deemed 'reasonable simply by virtue of the fact that they occur at the border.'" *Id.*, citing *Ramsey*, 431 U.S. at 616.

"Whether a search or seizure is constitutionally reasonable is judged by 'balancing its

---

[3]     The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

intrusion on the individual's Fourth Amendment interests against its promotion of legitimate government interests.'" *Denson v. United States*, 574 F.3d 1318 (11th Cir.2009), citing *United States v. Montoya de Hernández*, 473 U.S. 531, 537 (1985); *Brown v. Texas*, 443 U.S. 47, 50-51 (1979); *Camara v. Municipal Court*, 387 U.S. 523, 534 (1967). "The Government's interest in policing our borders has grown exponentially in the present era of foreign drug trafficking." *Denson*, 574 F.3d at 1339, citing *United States v. Mendenhall*, 446 U.S. 544, 561 (1980). "Stopping the flood of illicit drugs pouring into the United States has become particularly difficult as drug syndicates develop new techniques to prevent detection." *Id.* "As a whole, the law provides that when Customs Officers first encounter an individual seeking entry into the United States the officer has discretion to stop the person and conduct a preliminary border search without fear of running afoul of the Constitution." *Denson*, 574 F.3d at 1340, citing *United States v. Ramsey*, 431 U.S. 606, 619 (1977). The preliminary border search includes "conduct routine questioning, examine the entrant's luggage, and conduct *Terry* patdowns and frisks." *Denson*, 574 F.3d at 1340, and the collection of cases cited therein. "Because an individual's expectation of privacy is at its lowermost at border entry points, the officer need not possess any level of suspicion." *Id.*, and the collection of cases cited therein.

In view of the foregoing, the Court finds that the investigatory questioning of defendant Robles-Costoso does not offend the Fourth Amendment, simply because the Sovereign has a right to protect its borders. **Furthermore, the record shows, that law enforcement agents had been informed that the K-9 had alerted positive as to one particular piece of luggage [the defendant's], as the K-9's change of behavior was consistent with the odor of controlled substances**. (Emphasis ours). Thus, the Court finds that the officers' investigatory stop was not a

10

mere pretext, but an opportunity to corroborate information provided by a trained canine in the detection of controlled substances relating to the possession of controlled substances by a passenger traveling to Continental United States with the eventual intent to distribute the controlled substances in the State of New York.

### *Custody*

It is settled that "*Miranda* applies only to custodial interrogations; our analysis, therefore, focuses upon whether [the defendant] was in custody at any point during his initial questioning." *United States v. Jones*, 187 F.3d 210, 217-218 (1st Cir.1999).  "The decisive issue in the custody inquiry is 'whether there was a formal arrest or restraint of freedom of movement of the degree associated with a formal arrest.'" *Jones*, 187 F.3d at 217-218, citing *Stansbury v. California*, 511 U.S. 318, 322 (1994).  "In making this determination, we engage in a fact-specific inquiry, evaluating all of the circumstances surrounding the incident." *Id.*  "Although no single element dictates the outcome of this analysis, factors that we consider in deciding whether a defendant was in custody at the time of the questioning include: 'whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation.'" *Id.*, citing *United States v. Masse*, 816 F.2d 805, 809 (1st Cir.1987).

In the instant case, defendant Robles-Costoso failed to meet the threshold of "custody," that is, the defendant fails to show that he was under arrest when the officers were questioning him about his black bag, which tag number coincided perfectly with the defendant's boarding pass number. Defendant failed to state whether he was hand-cuffed; placed in a locked cell; whether he was mistreated or physically abused; restraint; and, most critical the duration of the officers' questioning.

Hence, based on the information provided by the defendant, the Court understands that defendant Robles-Costoso was not under custody, at any time during the investigatory stop and interrogation that followed, until the defendant was read his *Miranda* rights.

"Additionally, from defendant's allegation that he provided written consent to search his luggage prior to being read his *Miranda* rights, a reasonable inference can be drawn that he [defendant] was asked to provide consent to the search." *See Report and Recommendation*, Docket No. 34, page 5. "Seeking consent to search property, absent other indicia of a custodial interrogation, does not require *Miranda* warnings. *See United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir.1993) (holding that consenting to a search is not a self-incriminating statement, and "therefore a request to search does not amount to interrogation")." *See also* the collection of cases cited in the *Report and Recommendation*, Docket No. 34, pages 6-7. Consequently, the defendant's motion to suppress is denied.

### *The Illegal and Unreasonable Search v. the Fruit of the Poisonous Tree*

Defendant's allegation that his piece of luggage consisting of a black bag was seized illegally is denied, as the Court finds that the investigatory stop conducted by the law enforcement agents at the LMMIA on or about October 30, 2013, responded to a border search wherein a search warrant is not needed, being a border search an exception of the Fourth Amendment. *See United States v. Barrow*, 448 F.3d 37, 41-42 (1st Cir.2006) ("Because of the unique considerations concerning the entry of persons into the United States, routine searches at an international border are reasonable under the Fourth Amendment and do not require a warrant, probable cause, or even a reasonable suspicion"), citations omitted. *See also United States v. Uricoechea-Casallas*, 946 F.2d 162, 164-165 (1st Cir.1991). "It is well established that routine border inspections do not violate the

Fourth Amendment prohibition against unreasonable searches even when conducted without a warrant or probable cause. *United States v. Braks*, 842 F.2d 509, 511-12 (1st Cir.1988)." *Id.* "It is equally well established that the searches of passengers at Luis Muñoz Marín Airport are border searches. *García*, 905 F.2d at 559; *United States v. Mejía-Lozano*, 829 F.2d 268, 271 (1st Cir.1987); *United States v. McKenzie*, 818 F.2d 115, 117, 119-20 (1st Cir.1987)." *Id.*

In the instant case, the border search responded to a positive alert by a K-9 of the defendant's luggage. In addition, the defendant had voluntarily consented to the search of the bag which tag number perfectly matched with the defendant's boarding pass number. Hence, the Court finds that the defendant's luggage was legally searched and seized upon the defendant's voluntary consent to search his luggage, and that the investigatory stop conducted by the law enforcement agents, as well as the search of the defendant's luggage, was reasonable without offending the Fourth Amendment warranties.

**Conclusion**

For the reasons set forth above, the defendant's *Motion Requesting Suppression of Evidence*, Docket No. 27, is denied. The *Report and Recommendation*, Docket No. 34, is hereby adopted *in toto*, as supplemented herein.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of October, 2014.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
United States District Judge